## JAMES A. HAMILTON *vs.* CITY OF BOSTON.

A person walking a short distance in a public highway, simply for exercise and to take the air, on the evening of a Lord's day, with no purpose of going to or stopping at any place but his own house, or of passing from one city or town to another, is not liable to punishment therefor, under the statutes for the observance of the Lord's day; and may maintain an action to recover damages for an injury sustained by him, while so walking, in consequence of a defect in the highway.

TORT to recover damages for an injury sustained by the plaintiff bv reason of a defective way.

At the trial in the superior court, before *Ames*, J., it was admitted that Bromfield Street in Boston was a public street which the defendants were bound to keep in repair, and there was evidence tending to show that it had been out of repair for twenty-four hours preceding the accident.

The plaintiff testified that on the 3d of December 1865, which was Sunday, he had been somewhat unwell during the day, so that he remained at home and within doors until the evening; that early in the evening of that day a young friend called at his house in Hanover Street, and invited him to take a walk; that, thinking a walk would be useful to him, he accepted the invitation, and started off with his friend; and that, when he had proceeded a little way, he was joined by other friends and companions, and together they extended their walk to Bromfield Street, where the injury complained of was received.

Upon this evidence, the defendant's counsel requested the judge to rule that it was incumbent on the plaintiff, in order to entitle him to a verdict, to prove that he was travelling from necessity, or for purposes of charity. But the judge refused so to rule; and instructed the jury that a person walking under the circumstances testified to was not travelling unlawfully, within the meaning of the statute prohibiting travel on the Lord's day except from necessity or charity; and that the plaintiff, if he had otherwise proved his case, was entitled to a verdict, as much as he would have been if the same occurrence had happened on any other day of the week.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*C. H. Hill*, (*J. P. Healy* with him,) for the defendants. The instructions refused and those given rendered it unnecessary for the jury to decide whether at the time of the accident the plaintiff was walking from necessity or for purposes of charity. Unless this was decided by them affirmatively, he was not entitled to recover; for, if he was a traveller, he cannot recover unless so walking, because he was travelling on the Lord's day. *Bosworth* v. *Swansey*, 10 Met. 363. *Jones* v. *Andover*, 10 Allen, 18. If he was not a traveller, he cannot recover, because the defendants

were not bound to keep the highway in repair for any persons except travellers. *Blodgett* v. *Boston*, 8 Allen, 237. Under the statutes against travelling on Sunday, all persons are travellers who have occasion to pass along the highway for any purpose. *Gregg* v. *Wyman*, 4 Cush. 322, 324, 330, 331. *Higginson* v. *Nahant*, 11 Allen, 535, 536. Webster's, Richardson's and Worcester's Dictionaries. And in England, under similar statutes, it has been repeatedly held that a man walking for recreation is a traveller. *Atkinson* v. *Sellers*, 5 C. B. (N. S.) 442. *Taylor* v. *Humphreys*, 10 C. B. (N. S.) 429; *S. C.* 11 Law Times, (N. S.) 376. See also *Sts.* 1 Car. I. *c.* 1; 29 Car. II. *c.* 7; 2 Mass. Col. Rec. 177, 178; 3 Ib. 316; 4 Ib. pt. i. 150, 347; 5 Ib. 133, 239, 240; Prov. St. 11 Anne, (1712,) *c.* 1; Anc. Chart. 398; Bac. Ab. Heresy D, 1. The provisions of no previous statute were so broad and general on the subject of travelling on the Lord's day as our present one, first enacted in 1836. *St.* 1791, *c.* 58, § 2. Rev. Sts. *c.* 50, § 2. Gen. Sts. *c.* 84, § 2.

*S. J. Thomas*, for the plaintiff.

GRAY, J. The decent and religious observance of the Lord's day has been regulated and enforced by statute in Massachusetts from the earliest times. The degree to which it is wise or expedient to legislate upon this subject is within the province of the legislature. The courts have only to ascertain from the statutes the intent of the legislature, and to see that such intent is carried out.

By the Gen. Sts. *c.* 84, § 2, " whoever travels on the Lord's day, except from necessity or charity, shall be punished by fine not exceeding ten dollars for every offence." And it has been adjudged by this court that a person travelling in violation of the statutes for the observance of the Lord's day cannot maintain an action against a town for a defect in the highway, because his own unlawful act concurs in causing the damage complained of. *Bosworth* v. *Swansey*, 10 Met. 363. *Jones* v. *Andover*, 10 Allen, 18. It becomes necessary therefore to determine whether this plaintiff was so travelling when he received an injury from a defect in a highway in the city of Boston.

The existing statute is expressed in very brief and general terms, the meaning of which may be better understood by referring to other provisions of the same chapter, and to the earlier statutes upon the same subject, all of which, whether repealed or in force, are admissible aids in ascertaining the true construction. *Commonwealth* v. *Bailey,* 13 Allen, 545, and cases cited. As most of these statutes are not collected in the compilations in common use, it may be convenient to quote the language of the material provisions, upon examination of which it will appear that they have constantly recognized a distinction between "travelling" and ordinary walking in the streets.

The earliest statute which we have seen in which the word "travel" is used, is the *St.* of 3 Car. I. *c.* 2, passed just before the grant of the Massachusetts Colony charter, by which it was enacted that "no carrier with any horse or horses, nor wagonmen with any wagon or wagons, nor carmen with any cart or carts, nor wainmen with any wain or wains, nor drovers with any cattle," should, "by themselves or any other, travel" upon the Lord's day, under a penalty of twenty shillings for every such offence. The Massachusetts Colony ordinance of 1653 punished both "uncivilly walking the streets and fields," and "travelling from town to town," during daylight on the Lord's day. The ordinance of 1658 imposed a penalty on those who should "walk or sport themselves in the streets or fields" on the evening before or after that day. And the ordinances of 1668 and 1679 made other provisions for the punishment of persons travelling out of their own towns on the Lord's day or the previous evening, under certain circumstances. 3 Mass. Col. Rec. 316. 4 Ib. pt. i. 150, 347; pt. ii. 395. 5 Ib. 239. All the earlier ordinances were incorporated, without material change of language, in the revision of the Massachusetts Colony laws in 1672, pp. 132–134. The laws of the Plymouth Colony punished "unnecessary travelling," and "unnecessary violent riding," but contained no distinct prohibition of walking, on the Lord's day. Plym. Col. Laws, (ed. 1836) 113, 138, 158, 199, 268.

In 1692, after the union of the two colonies, it was provided by the Prov. St. of 4 W. & M. *c.* 8, § 2, (which is substantially

copied from the English *St.* of 29 Car. II. *c.* 7, § 1, adding only the word "traveller,") that " no traveller, drover, horsecourser, wagoner, butcher, higler, or any of their servants, shall travel on that day or any part thereof, except by some adversity they are belated and forced to lodge in the woods, wilderness or highways the night before; and in such case to travel no further than the next inn or place of shelter on that day ; upon the penalty of twenty shillings ; " and by § 3 all justices of the peace, constables and tithingmen were required to take care that this act be observed, " as also to restrain all persons from swimming in the water, unnecessary and unseasonable walking in the streets or fields in the town of Boston or other places," on the Lord's day, or the evening preceding or following. And by a resolve of 1704 the degree of punishment implied by the word " restrain " in the last clause was defined. Mass. Prov. Laws, (ed. 1726) 14, 15.

By the Prov. St. of 11 Anne, (1712) *c.* 1, § 6, " all persons who shall be found in the streets, wharves, fields or other places within any town on the evening following the Lord's day, disporting, playing, making a disturbance, or committing any rudeness," were to be punished ; and constables were directed and empowered " to prevent the profanation of the Lord's day, by restraining persons from walking, recreating and disporting themselves in the streets, wharves or fields in the time of public worship." Mass. Prov. Laws, (ed. 1726) 217. Anc. Chart. 398. Under this statute, it will be observed, quietly walking in the streets or elsewhere was not prohibited, except during public worship.

The Prov. St. of 3 Geo. I. (1716) *c.* 1, increased the punishment of " all persons travelling contrary to the " act of 4 W. & M., and imposed a penalty for a month's wilful absence from public worship; but said nothing of the " unnecessary and unseasonable walking in the streets or fields," mentioned in the third section of that act. Mass. Prov. Laws, (ed. 1726) 251. The Prov. St. of 1 Geo. II. (1727) *c.* 8, § 1, again increased the penalties on " all persons that for the future shall travel contrary to the said act ; " and by § 4, fixed the fines of persons " swimming in the

water, unnecessarily walking or riding in the streets, lanes or highways or common field of the town of Boston, and all other towns and places within this province," at one third as much. Mass. Prov. Laws, (supp'ts to ed. 1726,) 380, 381.

By the Prov. St. of 1 Geo. III. (1761) *c.* 1, § 1, all former laws upon the subject were repealed. By § 3, " no traveller, drover, horsecourser, wagoner, butcher, higler, or any of their servants, shall travel on the Lord's day, or any part thereof," (except as excepted in the Prov. St. of 4 W. & M. *c.* 8, § 2, above quoted,) " upon the penalty of a sum not exceeding twenty shillings, nor less than ten shillings." By § 5, " if any person or persons shall be recreating, disporting or unnecessarily walking or loitering, or if any persons shall unnecessarily assemble themselves, in any of the streets, lanes, wharves, highways, commons, fields, pastures or orchards of any town or place within this province, upon the Lord's day, or any part thereof, every person so offending shall forfeit and pay the sum of five shillings, and upon every conviction after the first shall be bound to their good behaviour." The act also provided for the election of wardens in each town, and gave them power by § 10 to enter inns and houses of public entertainment on the Lord's day, and also " to examine all persons suspected as unnecessarily travelling on the Lord's day, and to demand of all such persons the cause thereof, together with their names and places of abode, and if such persons shall refuse to make answer to such demands, or shall not give satisfaction to such warden or wardens, that they are then employed in travelling upon his majesty's service, or in the immediate service of this government, or shall not give such other reasons for their travelling upon the Lord's day as shall satisfy such wardens of the necessity thereof, such wardens shall return the names of all such persons as they shall know or can obtain the names of " to a justice of the peace or the grand jury. And by § 11, the wardens of Boston (to which this section was limited) were required to go through the streets, lanes and other parts of the wards, and authorized " to demand the names and places of abode of any persons whom they shall suppose and suspect to be unnecessarily abroad, and the cause and reason

thereof," and, in case of their not giving a satisfactory answer, or refusing, on being required, " to repair to their places of abode or lodging, and that by the usual and most direct streets or ways," to give information thereof on the next day or as soon after as might be to a justice of the peace. Mass. Prov. Laws, (suppl'ts. to ed. 1759,) 392.

In 1782, all previous laws were again repealed, and the sub-- stance of sections 3, 6 and 10 of the Prov. St. of 1 Geo. III., above quoted, was reënacted. The section prohibiting travelling was put in this form : " No traveller, drover, wagoner, teamster or any of their servants, shall travel on the Lord's day or any part thereof (except from necessity or charity) upon the penalty of a a sum not exceeding twenty shillings nor less than five shillings." The section authorizing the examination of persons suspected of being " unnecessarily abroad " in Boston was omitted. But the wardens of any town were authorized not only to examine, but forcibly to stop, and, in case of unsatisfactory answers, detain until a regular trial could be had, " all persons suspected as unnecessarily travelling." *St.* 1782, *c.* 23, §§ 2, 5, 15, 16, 25.

In 1792 the legislature passed another act, repealing all previous laws, and covering the whole subject ; including the provision that " no traveller, drover, wagoner, teamster, or any of their servants, shall travel on the Lord's day ; " giving to tithingmen the power, which wardens had under the Prov. St. of 1 Geo. III. § 10, of examining persons suspected of " unnecessary travelling," but omitting the power of forcibly detaining them until a trial could be had ; and also omitting all provisions prohibiting or restraining " unnecessary walking " in the streets or elsewhere ; and no such provisions have been inserted in any later statute. *St.* 1791, *c.* 58, §§ 2, 10, 14. It is reasonable to infer that the provisions against mere unnecessary walking in the streets were intentionally omitted by the legislature, and for the reason that they were an unwise and arbitrary interference with the comfort and conduct of individuals ; with the like intention and reason which were declared by this court in *Pearce* v. *Atwood,* 13 Mass. 349, 350, to have been the cause

of omitting the provision for forcibly detaining travellers, strictly so called.

By *Sts.* 1796, *c.* 89, and 1815, *c.* 135, the fines for such travelling were increased; and by § 3 of the *St.* of 1796, the owner or driver of any hackney carriage belonging to the town of Boston, who drove it "into or from said town on the Lord's day, without first having obtained a certificate of permission from some justice of the peace within said town for himself and each and every passenger by him so carried," forfeited his license.

Upon the passage of the Revised Statutes, all former statutes upon this subject were repealed. The commissioners on those statutes reported the section imposing a penalty on travelling on the Lord's day in the form to which it had been reduced in the *St.* of 1791, namely, "no traveller, drover, wagoner, teamster, or any of their servants, shall travel on the Lord's day or any part thereof, except from necessity or charity," under a penalty somewhat increased. The legislature passed the section in the form in which it now stands, namely, "no person shall travel on the Lord's day or any part thereof, except from necessity or charity." Rev. Sts. *c.* 50, § 2. The reason of this change can be judged only from the face of the statute, in the light of the previous statutes on the same matter. The words defining the act prohibited are not altered, but only the words describing the persons who may be guilty of it. The objects of the change would seem to have been to simplify the language; to dispense with the necessity, in a prosecution on this statute, of alleging or proving that the defendant was of a particular occupation or class of persons; and to preclude the possibility of an interpretation that this particular enumeration might restrict the persons to whom the section should apply. See *Commonwealth* v. *Maxwell*, 2 Pick. 139; *Sandiman* v. *Breach*, 7 B. & C. 96; *S. C. & D. & R.* 796; *The King* v. *Whitnash*, 7 B. & C. 596; *The Queen* v. *Cleworth*, 4 Best & Smith, 927.

It was ingeniously argued that if the plaintiff was not a traveller, he could not maintain this action, because the defendants were not bound to keep the highway in repair for him. But this argument is founded upon too strict a construction of the

highway act, resting more on an adherence to mere words, than on a consideration of its purpose, or of the meaning in which the words are used.

The successive highway acts of the Commonwealth have provided that highways and streets shall be kept in repair at the expense of the town or city, " so that the same may be safe and convenient for travellers; " and that if any person receives or suffers bodily injury or damage to his property through a defect or want of repair therein, he may maintain an action. *St.* 1786, *c.* 81, §§ 1, 7. Rev. Sts. *c.* 25, §§ 1, 22. *St.* 1850, *c.* 5. Gen. Sts. *c.* 44, §§ 1, 22. Although the latter provision in terms gives a right of action to " any person," the Prov. St. of 5 W. & M. (1693) *c.* 10, § 5, of which the later statutes are substantial re-enactments, in terms limited it to any person receiving injuries " in passing " the highway. Mass. Prov. Laws, (ed. 1726) 48 ; Anc. Chart. 269. And it is settled by recent decisions of this court that these statutes give no right of action to any person who is not passing over the highway in the same manner as travellers do; and are therefore inapplicable to the case of a horse, tied outside of the highway, getting loose and running upon the highway ; of a person stopping in the highway for conversation ; or of a boy engaged in playing, and starting suddenly away from another boy in the course of the game. *Richards* v. *Enfield,* 13 Gray, 344. *Stickney* v. *Salem,* 3 Allen, 374. *Blodgett* v. *Boston,* 8 Allen, 237. The reason of this was clearly stated by the present chief justice in the first case. " It is only those who are using the road for legitimate purposes in the ordinary mode, that can claim indemnity of a town for injury caused y defects in the highway." The question, whether a person is so using the highway as to entitle him to maintain an action against the city or town for a defect therein, depends upon the manner in which he is using the highway at the moment of the accident, and not upon the duration or the purpose of his use.

A person must doubtless, in a loose and general sense, be travelling, in order to maintain an action against a city or town for a defect in a highway. But it does not follow that in a different and a penal statute the word is used in the same sense.

The verbal argument that if the plaintiff was not a traveller, he had no right of action under the highway act, and if he was, he was violating the Lord's day act and therefore could not recover, is fully met by a similar argument upon another section of the Lord's day act itself. By the Gen. Sts. *c.* 84, § 3, any keeper of a house or place of public entertainment or refreshment, who entertains therein on the Lord's day "any persons not being travellers, strangers or lodgers," is subject to a penalty. A similar section has existed in the statutes of Massachusetts for a century and a half. Prov. Sts. 10 W. III. *c.* 8, § 1; 1 Geo. III. *c.* 1, §§ 4, 7. *Sts.* 1782, *c.* 23, §§ 3, 7 ; 1791, *c.* 58, §§ 3, 5. Rev. Sts. *c.* 50, § 3. And in an indictment upon this section, it must be alleged and proved that the persons in question were not travellers. *Commonwealth* v. *Maxwell,* 2 Pick. 139. But if the construction for which the city contends were correct, and every person who walked in the street from one house to another were a traveller, there could be no persons who were not travellers other than strangers or lodgers.

This analysis and review of the provisions of the statutes upon this point conclusively show it to be inconsistent with the ordinary canons of interpretation to hold that every person who walks in the street on the Lord's day "travels," within the meaning of the Gen. Sts. *c.* 84, § 2. Upon the construction contended for in behalf of the city, every person, not impelled by necessity or charity, who at any hour of the Lord's day (which by § 12 includes the time from midnight to midnight) should go a few steps to visit a friend, or take a walk, however short, for recreation, alone or with his family, or should even knowingly take the longer way to or from church because it was pleasanter, would be liable to a fine of ten dollars. A person may no doubt travel for pleasure, as well as for business ; on foot, as well as on horseback or in a carriage. But it is not every one who walks in the streets, that "travels," in the sense in which that word is used either in ordinary speech or in the Lord's day acts. It is difficult to prescribe by abstract definitions, applicable to all possible states of facts, what must be the duration and objects of a walk to constitute travelling, within

these statutes. The legislature, after a long experience and repeated enactments, have left the language quite indefinite ; and it is the duty of the court to decide cases as they arise, rather than to undertake by general rules to anticipate the circumstances and degrees of future cases. Many of the provisions of the earlier statutes would seem to indicate that no person is to be considered as travelling, who does not intend to pass from one city or town to another. But, confining ourselves to the facts disclosed by this bill of exceptions, we are of opinion that a person walking with a friend on Sunday evening less than half a mile, with no apparent purpose of going to or stopping at any place but his own home, much less of passing out of the city, and no object of business or pleasure, except open air and gentle exercise, is not guilty of travelling, or liable to punishment, under this act.

The English decisions cited by the defendants' counsel were founded upon the terms and apparent intent of peculiar statutes concerning innkeepers ; and every person there held to be a traveller had walked beyond the limits of his own town and then stopped at a public house.     *Exceptions overruled.*